IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KEVIN TWEELINCKX,                    )    Civil No.: 3:12-cv-01328-JE
                                     )
                Plaintiff,           )     FINDINGS AND
                                     )    RECOMMENDATION  AND ORDER
        v.                           )
                                     )
UNITED PARCEL SERVICE, INC.,         )
 a foreign business corporation,     )
                                     )
                Defendant.           )
_____       )

        David J. Hollander
        Jovanna L. Patrick
        Hollander Lebenbaum & Gannicott
        1500 S.W. First Avenue
        Suite 700
        Portland, OR 97201-5860

                Attorneys for Plaintiff

        Calvin L. Keith
        Joanna T. Perini
        Perkins Coie, LLP
        1120 NW Couch Street
        10th Floor
        Portland, OR 97209-4128

                Attorneys for Defendant

FINDINGS AND RECOMMENDATION – 1

JELDERKS, Magistrate Judge:

Plaintiff Kevin Tweelinckx brings this employment related action alleging Defendant United Parcel Service. Inc. ("UPS") violated state and federal disability discrimination laws and state workers' compensation discrimination and reinstatement laws. Both parties have filed motions for summary judgment. In addition, Plaintiff has filed a motion to strike certain portions of the Declaration of Allen Goodall submitted in support of Defendant's motion for summary judgment and Defendant has raised evidentiary objections to certain materials submitted by Plaintiff.

For the reasons set out below, the parties' cross-motions for summary judgment should be denied.

## Claims

Plaintiff's Complaint sets out four claims.

Plaintiff's first claim alleges that Defendant violated state law by discriminating against him for having filed a workers' compensation claim.

Plaintiff's second claim alleges that Defendant violated state law by failing to reinstate him to his former position of employment after he sustained a compensable injury.

Plaintiff's third claim alleges that Defendant violated state law by unlawfully discriminating against him on the basis of his disability.

Plaintiff's fourth claim alleges that Defendant violated the Americans with Disabilities Act, 42 U.S.C. § 12112, by unlawfully discriminating against him on the basis of his disability.

In response to Defendant's motion for summary judgment, Plaintiff has withdrawn his disability discrimination claims under both state and federal law and his state law claim alleging

a failure to reinstate.  Left pending is Plaintiff's claim alleging that Defendant violated ORS

659A.040 by discriminating against him because he filed a workers' compensation claim.

## Background

The parties' allege the following facts.

Plaintiff has been employed by UPS since 1989 and works out of the Cascade Center,

also known as the Tualatin Hub, in Tualatin, Oregon.  The Cascade Center is part of UPS's Coast

Division of the Northwest District.  Plaintiff began working for UPS as a part-time package

loader.  Beginning in about 1995, Plaintiff took on the position of package car driver.  Plaintiff is

a member of the Teamsters Union.  The relationship between UPS's Teamsters employees and

UPS is governed by a Collective Bargaining Agreement ("CBA").

On January 16, 2007, Plaintiff sustained a back injury for which he filed a workers'

compensation claim.    The claim was closed on August 21, 2007 by Defendant's claim

processing agent ("Gallagher") with a determination that there was no permanent disability.  On

October 26, 2007 Plaintiff asserted an aggravation of his injury.  Gallagher denied the

aggravation claim.  On February 21, 2008, Plaintiff's counsel sent Gallagher a "Notice of Claim"

for additional medical conditions which Gallagher denied.  On April 11, 2008, Plaintiff also

made a claim for two of his conditions under an "occupational disease" theory.  Again, Gallagher

issued a denial notice.  Plaintiff appealed these denials and a hearing was held before the

Workers' Compensation Board.  The ALJ found in favor of Plaintiff on his claims regarding his

L4-5 disc herniation and lumbar radiculopathy and that decision was affirmed on Review on

March 31, 2009.  On November 12, 2008 and August 10, 2009, Plaintiff had additional incidents

resulting in re-injury to his back for which he submitted claims.

Between his injury date in 2007 and December 13, 2010, when he received his medical release and returned to his regular job as a package car driver, Plaintiff had off-work times, worked light-duty, and occasionally worked as a driver. Upon returning to work, Plaintiff was assigned a "ride-along." A ride-along involves UPS supervisors riding as a passenger with a package car driver on his route for the day. The supervisor observes the driver and completes a Package Driver Methods Checklist rating the driver's performance and adherence to UPS methods. When the ride concludes, the supervisor creates a statement that is read to or summarized for the employee the following day, with a Union representative present. If the employee requests a copy of the review, it is provided. UPS conducted ride-alongs with Plaintiff throughout the time of his employment.

In late February, 2011, Allen Goodall became the Division Manager of the UPS's Coast Division. According to Goodall, he was told that UPS's Cascade Center had issues of safety, performance and service that needed to be dealt with including a high number of vehicle accidents and injuries and a high number of employees on the "9.5" list. The 9.5 list allows drivers to limit their per day work hours. Under the CBA, drivers who opt in to the 9.5 list have the right to file a grievance and recover triple time pay for their excessive hours if UPS works the driver more than nine and one half hours per day for any three days in a work week.

To address the safety, performance and service issues that had been identified at the Cascade Center, Goodall's management team reviewed incident and accident records for all employees in the Division. The team also reviewed over/under reports, and looked at drivers who were constantly on the 9.5 list and working excessive hours. Over/under reports indicate which employees complete their routes in times both faster and slower than the amount of time estimated to be necessary for a particular route. As a result of these reviews, in March of 2011

approximately ten drivers at the Cascade Center were identified as "most help needed" or "MHN" drivers.  Plaintiff was one of these ten MHN drivers.

Goodall met with Plaintiff on his route to discuss Plaintiff's record.  According to Plaintiff, Goodall was intimidating in confronting him about the number of lost-time on the job injuries he had.  According to Goodall, he told Plaintiff that his record indicated that he had significant over allowed hours, was routinely on the 9.5 list, had problems keeping to 9.5 hours and that he had a high number of reported injuries.  Goodall also asserts that the purpose of this discussion was to let Plaintiff know that Goodall was concerned, to find out what Plaintiff thought were the issues that were preventing him from performing better and to have Plaintiff recognize that he should attempt to improve his performance and reduce injuries by working more safely and efficiently.  At some point during the interaction, Goodall asked Plaintiff if he would hire someone with the injury record Plaintiff had.

Plaintiff was subsequently scheduled for performance and safety ride alongs.  On March 15, 2011, Plaintiff's supervisor, Chris Long, rode with Plaintiff and recorded 69 observed methods infractions.  On a second ride along on March 22, 2011, Plaintiff had 39 observed methods violations, many of which were similar to those identified on March 15.  On March 25, Plaintiff was issued a written warning.  During a ride along on April 7, 2011, Plaintiff had 82 observed methods infractions.  Long issued a second warning letter and a one-day suspension for failure to follow methods.  Another ride along was held on April 25, 2011, during which Plaintiff had 89 methods infractions.  On April 26, 2011 UPS issued Plaintiff a termination letter.  Under the CBA, such terminations do not result in the immediate loss of employment.  The terminated employee remains in employment, called a "working termination," until the grievance process has run its course.  The termination can be enforced, reduced to discipline or rescinded

FINDINGS AND RECOMMENDATION – 5

depending on the results of discussions with the employee and the union, and, if necessary, the

results of an appeal to the grievance panel hearing and arbitration process. (Sullivan Decl. ¶ 20).

On May 2, 2011, Plaintiff filed a workers' compensation claim for mental stress and was

off work from April 28, 2011 through July 17, 2011.  Plaintiff's claim was denied by Gallagher

by letter dated May 10, 2011 and Plaintiff appealed.  Plaintiff also filed grievances related to the

discipline he had received.  When Plaintiff returned to work on July 18, 2011 he was scheduled

for a ride along during which he had 46 observed methods violations.  On July 19, 2011, a

meeting was held to review with Plaintiff the methods he had failed to follow on the previous

day.  UPS managers and a union shop steward were present for this meeting.  A follow-up ride

along was held and supervisor Darrell Smith observed 30 methods infractions, most of which

were similar to those reported in previous ride-alongs.  Plaintiff was issued a second termination

letter but continued to work.   In October, 2011, Plaintiff left his position as a package car driver

to take a "combo job," which is two part-time jobs put together to make one full-time job.  The

discipline that had been administered was withdrawn by UPS.

On November 1, 2013, after several days of hearings spanning 2012 and 2013, a

Workers' Compensation Board Administrative Law Judge (ALJ) issued an Opinion and Order

upholding Gallagher's denial of Plaintiff's May 1, 2011 mental disorder claim.  In his opinion,

the ALJ stated that

> Based on the thorough evidentiary record, I conclude that the employer singled
> out claimant for severe disciplinary action, not based on how he performed his
> job, but because he had filed a large number of workers' compensation claims and
> because he put himself on the 9.5 list.  The issue then concerns whether such
> action was reasonable.

(Hollander Dec. Ex. 2, pg. 12).  The ALJ also concluded that "the employer's disciplinary,

corrective, or job performance evaluation was unreasonable" but noted that Plaintiff had a

FINDINGS AND RECOMMENDATION – 6

"significant history of preexisting mental disorders caused by factors unrelated to the employer's unreasonable discipline." and "claimant must establish by clear and convincing evidence that the denied mental disorder arose out of and in the course of his employment and that the employer's unreasonable discipline was the major contributing cause of his mental disorder." Id.

Ultimately, the ALJ upheld the denial of Plaintiff's claim, concluding

> [t]he record establishes that claimant was subjected to unreasonable discipline and that the discipline contributed to his need for treatment of a mental disorder. The record also establishes that claimant had a long history of anxiety, panic attacks and depression, as well as a preexisting adjustment disorder. The fact that claimant's work environment contributed to his mental disorder does not make it the major contributing cause of the disorder. The legislature has set a very high bar for compensability of mental disorders. Based on the record in this case, I conclude that the preponderance of evidence fails to establish that the employer's unreasonable discipline was the major contributing cause of claimant's mental disorder . . . .

Id. Plaintiff initially appealed the ALJ's decision but withdrew his appeal on January 23, 2014.

## Evaluating Motions for Summary Judgment

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. Id. When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. Id. at 324.

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. Id. at 630-31. The evidence of the nonmoving party is to be believed, and all

justifiable inferences are to be drawn in the nonmoving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1985).  No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

Where parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." <u>A.C.L.U. of Nev. v. City of Las Vegas</u>, 466 F.3d 784, 790–91 (9th Cir. 2006) (quoting <u>A.C.L.U. of Nev. V. City of Las Vegas (<i>A.C.L.U. I</i>)</u>, 333 F. 3d 1092, 1096-97 (9th Cir. 2003).

<u>Discussion</u>

**I.  <u>Plaintiff's Motion for Summary Judgment – Issue Preclusion</u>**

Plaintiff contends that the determination by the workers' compensation ALJ that UPS's disciplinary, corrective or job performance evaluation was unreasonable should be given preclusive effect such that UPS is estopped from denying liability and asserting that it acted out of a legitimate non-discriminatory business reason.

Federal courts in Oregon follow state law on the issue of claim preclusion.  <u>See</u> <u>Dodd v. Hood River County</u>, 136 F.3d 1219, 1225 (9th Cir. 1998).  Under Oregon law, the five requirements for application of the principle of issue preclusion are:

1. The issue in the two proceedings is identical.

2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

FINDINGS AND RECOMMENDATION – 8

5. The prior proceeding was the type of proceeding to which this court will give preclusive effect.

Nelson v. Emerald People's Utility Dist., 318 Or 99, 104 (1993)(internal citations omitted).  The

parties agree that the Nelson factors are applicable but dispute whether the first two factors are

met in this case.

## A.  **Issue was Actually Litigated and was Essential to the Final Decision**

Defendant does not appear to dispute Plaintiff's contention that the issue of the

reasonableness of Defendant's disciplinary actions was actually litigated.  The focus of the

dispute rests on whether the reasonableness determination by the ALJ was "essential" to his final

decision.

The issue before the ALJ in the prior administrative proceeding was whether Plaintiff's

mental disorder diagnosed as an adjustment disorder was compensable under the provisions of

the Workers' Compensation statutes. (Hollander Dec. Ex. 2, pg. 1).  In order to establish

compensability, a claimant must prove that employment conditions were the major contributing

cause of his occupational disease. ORS 656.802(2)(a).  Additionally, a mental disorder is not

compensable unless a claimant establishes all of the following:

> (a) The employment conditions producing the mental disorder exist in a real and objective sense.
>
> (b) The employment conditions producing the mental disorder are conditions other than conditions generally inherent in every working situation or reasonable disciplinary, corrective or job performance evaluation actions by the employer, or cessation of employment or employment decisions attendant upon ordinary business or financial cycles.
>
> (c) There is a diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community.
>
> (d) There is clear and convincing evidence that the mental disorder arose out of and in the course of employment.

FINDINGS AND RECOMMENDATION – 9

ORS 656.802(3)(a)-(d).  The Court of Appeals in <u>Liberty Northwest Ins. Corp. v. Shotthafer</u>, 169 Or. App 556 (2000), set out the weighing process for the major contributing cause analysis in a mental disorder occupational disease claim.  As the court explained, the first step is to place each factor causing claimant's mental disorder into one of three different categories: 1) causative work-related factors not excluded by ORS 656.802(3)(b), e.g., unreasonable discipline; 2) causative work-related factors excluded by ORS 656.802(3)(b), e.g., reasonable disciplinary actions; and 3) causative factors not related to work.  <u>Shotthafer</u>, 169 Or. App. at 565-66.  Non-excluded work factors must then be weighed against excluded work factors and non-work factors. Only if the non-excluded work factors outweigh the other factors combined, is the claim compensable. <u>Id.</u>

The parties disagree on the order in which the ALJ must make his determinations. Plaintiff argues that the ALJ must first determine which "employment conditions" can be considered in deciding whether a claimant has proven that those employment conditions were the major contributing cause of his occupational disease.  In order to do this, Plaintiff argues, the ALJ must determine which employment conditions qualify for consideration under ORS 656.802(3)(b).  In effect, Plaintiff argues that the ALJ must go through the analysis of ORS 656.802(3)(b) before turning to a determination under ORS 656.802(2), thereby making a finding regarding the reasonableness of Defendant's discipline of Plaintiff "essential" to the ultimate decision.

Defendant, in contrast, contends that because the ALJ denied Plaintiff's claim based on Plaintiff's failure to prove that employment conditions were the major contributing cause of his disease, there was no need to reach the issue of whether Defendant's discipline of Plaintiff was

reasonable. Defendant argues that the ALJ's determination under ORS 656.802(2) that Defendant's discipline of Plaintiff was not the major contributing cause of his occupational disease precluded any analysis of whether that discipline was unreasonable under ORS 656.802(3)(b). Thus, according to Defendant, the ALJ's finding that the discipline was unreasonable was not essential to the final determination.

On the facts of this case, I conclude that the ALJ's determination that Defendant's disciplinary action was unreasonable was not essential to the final decision on the merits of the earlier proceeding. Here, the ALJ in the prior proceeding found that Plaintiff had a long history of anxiety, panic attacks and depression and a preexisting adjustment disorder. The ALJ went on to state that "The fact that Plaintiff's *work environment* contributed to his mental disorder does not make it the major contributing cause of the disorder." (Hollander Decl., Ex. 2, p. 14)(emphasis added).

Oregon's occupational disease statute is explicit that it is designed to provide protection only for those diseases "*arising out of and in the course of employment* caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein . . . ." ORS 656.802(1)(emphasis added). In order for any occupational disease to be compensable, there must first be a work-related factor or "employment condition." That "employment condition" need not be the sole cause of the disease but it must be the "major contributing cause." ORS 656.802(2)(a). Plaintiff argues that in order to determine whether employment conditions are a major contributing cause the ALJ must first determine the nature of those employment conditions and if there are no non-excluded conditions the analysis stops. While I agree that an ALJ must look to the three categories of causative conditions, here, where the ALJ's final determination is based on the conclusion that

FINDINGS AND RECOMMENDATION – 11

non-employment conditions were the major contributing cause of Plaintiff's mental disorder, it is irrelevant whether the employment conditions under consideration were excluded or non-excluded under ORS 656.802(3)(b).   However the weight may have been distributed between the two employment-condition categories, the non-employment category outweighed them.  In this case, regardless of whether the ALJ found Defendant's discipline of Plaintiff reasonable, his ultimate decision – that non-employment conditions were the major contributing cause of Plaintiff's disease and therefore Plaintiff's mental disorder was not compensable – would have been the same.  I conclude that the issue of whether Defendant's discipline of Plaintiff was reasonable was not essential to the final decision in the prior proceeding.  Accordingly, it is not entitled to preclusive effect.

B.  **Issues in the Two Proceedings are Identical**

My conclusion that it was not essential for the ALJ to decide the issue of whether Defendant's discipline of Plaintiff was reasonable in order to reach a final decision on the merits in the prior proceeding makes is unnecessary for me to reach the question of whether the issues are identical between the two proceedings.  Nevertheless, in order to create a full record for review, I will briefly address the parties' arguments regarding this factor.

Plaintiff contends that the issues are identical because the elements a claimant must prove in a workers' compensation occupational disease mental disorder claim under ORS 656.802(3) involve the same basic elements of the claim at issue in this case.  Specifically, Plaintiff argues that in this case he must prove that Defendant engaged in the conduct complained of, which is the same as the requirement under ORS 656.802(3)(a) that "the employment conditions producing the mental disorder exist in a real and objective sense."  Plaintiff also argues that the requirement in this case that he prove Defendant was motivated to engage in retaliatory conduct

because Plaintiff exercised his right under ORS Chapter 656 to file workers' compensation

claims is identical to the requirement under ORS 656.802(3)(b) that he prove that the

employment conditions producing his mental disorder are conditions "other than conditions

generally inherent in every working situation or reasonable disciplinary, corrective or job

performance evaluation actions by the employer, or cessation of employment . . . ."

     Defendant argues that the issue in the workers' compensation proceeding was not

identical to the issue in this case because in the prior proceeding Plaintiff framed, and the ALJ

decided, the claim based on Plaintiff's allegation that Defendant's conduct was motivated by

Plaintiff's history of workers' compensation claims *and* his status on the 9.5 list.  In the present

case, as Defendant notes, Plaintiff's decision to place himself on the 9.5 list does not factor into

his claim that Defendant discriminated against him in retaliation for having filed workers'

compensation claims.

     Plaintiff is correct that in the present case he need not show that his invocation of the

workers' compensation system was the sole factor motivating Defendant's employment decision

but only that it was a "substantial factor."  Seitz v. State By and Through Albina Human

Resources Center, 100 Or. App. 665, 675 (1990)(citing Holien v. Sears, Roebuck and Co., 298

Or. 76, 90 n. 5 (1984)).  However, I am unpersuaded by Plaintiff's argument that the ALJ's

decision shows "quite clearly that it was the work injuries more than the 9.5 list status" that were

the substantial factor in Defendant's employment decision.

     The ALJ concluded "that the employer singled out claimant for severe disciplinary

action, not based on the way he performed his job, but because he had filed a large number of

workers' compensation injury claims and because he put himself on the 9.5 list."  (Hollander

Decl. Ex. 2, p. 12).  He then found this discipline unreasonable based on a number of factors

FINDINGS AND RECOMMENDATION – 13

including "most significantly, that the employer ultimately rescinded the warning letters and

termination decision after a union grievance procedure . . . ." Id.  As Plaintiff points out, the ALJ

did note earlier in his opinion that other drivers who were on the 9.5 list were not subjected to the

same degree of discipline (Hollander Decl., Ex. 2, pg. 6).  However, this is not enough to show,

as Plaintiff argues, that "there can be no doubt that the ALJ found the work injuries were a

substantial factor . . . ." (Reply in Support of Pl.'s MSJ at pg. 8).  The issue in the previous

proceeding, both as framed by the Plaintiff and as decided by the ALJ, combined the workers'

compensation claim and 9.5 status factors.  (Hollander Decl., Ex. 6, pg. 5; Ex. 2, pg. 12).  In the

current proceeding, the only protected activity at issue is Plaintiff's utilization of the workers'

compensation system.  Accordingly, the issues are not identical and are, therefore, not entitled to

preclusive effect.

      Plaintiff has moved for summary judgment based on issue preclusion as to the liability

portion of his First Claim for Relief and Defendant's Ninth Affirmative Defense, which asserts

that

"[a]ny and all actions by defendant of which Plaintiff complains were justified by legitimate

business reasons and/or business necessity."(Def.'s Answer and Aff. Defenses, pg. 5).  Based

upon a careful review of the records in both parties' motions and for the reasons discussed

above, I conclude that Plaintiff's motion for summary judgment should be denied as to both

issues.

## II. **Defendant's Motion for Summary Judgment:**

      Defendant moves for summary judgment on Plaintiff's single remaining claim for

workers' compensation discrimination.  Defendant contends that Plaintiff cannot establish that he

was discriminated against because of his protected participation in the workers' compensation

system.  Defendant further asserts that, even if Plaintiff could establish a prima facie case of

unlawful discrimination, it is entitled to summary judgment because the record establishes that

Plaintiff was terminated for legitimate, nondiscriminatory reasons.

A.  **Evidentiary Issues**

As a preliminary matter, Plaintiff has filed a motion to strike paragraph 14 of the

Declaration of Allen Goodall submitted in support of Defendant's Motion for Summary

Judgment. (Dkt. No. 44).  In addition, Defendant has raised several evidentiary objections to

material submitted in support of Plaintiff's Opposition to Defendant's Motion for Summary

Judgment including certain testimony from the prior workers' compensation board hearing and a

portion of Plaintiff's Declaration.

Concerning Plaintiff's Motion to Strike, I have reviewed the paragraph in dispute and the

parties' arguments and, for purposes of the present motions for summary judgment, deny

Plaintiff's motion.

Some of Defendant's evidentiary objections are well taken.  However, for the reasons

discussed below, I conclude that the Defendant's motion for summary judgment should be

denied and, based upon a careful review of all of the material the parties have submitted, I would

recommend denying the motion for summary judgment regardless of whether I sustained

Defendant's objections.  I am satisfied that judicial economy is best served by simply allowing

the evidence and giving the material in question the weight to which I think it is entitled.  This

will allow the judge reviewing this Findings and Recommendation to do likewise, without the

necessity of reviewing each of the evidentiary objections and my decision as to each objection

individually.

B.  **Standards for Evaluating Workers' Compensation Discrimination Claims**

This is a diversity action brought under Oregon law. Oregon Revised Statute 659A.040 makes it an unlawful employment practice for an employer to "discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS chapter 656 or has given testimony under the provisions of those laws." ORS 659A.040.

The burden shifting analysis of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) applies to claims brought in this court under Or.Rev.Stat. § 659A. <u>See</u> <u>Snead v. Metropolitan Prop. & Cas. Ins. Co.</u>, 237 F.3d 1080, 1090-93 (9th Cir. 2001) (holding that even though Oregon courts do not follow the burden-shifting approach, the Oregon rule is not outcome-determinative, so the burden-shifting framework is appropriate in the Ninth Circuit); <u>see also</u> <u>Dawson v. Entek Intern.</u>, 630 F.3d 928, 935 (9th Cir.2011)("<u>Snead</u> represents the law of this circuit and applies in all cases in federal district court in which the choice between federal and state procedural law is presented. The answer to the question whether federal procedural law must be applied is the same regardless of the source of the federal court's subject matter jurisdiction over a claim.")

The <u>McDonnell Douglas</u> burden shifting framework provides that if a plaintiff proves a prima facie case, the employer must present evidence of a legitimate, non-retaliatory reason for the adverse action. <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802-804. If the employer successfully carries this burden, then the plaintiff must show the employer's proffered reason was merely pretext for a discriminatory or retaliatory motive. <u>Id.</u>

To establish a prima facie case under ORS 659A.040, a plaintiff must show that he (1) invoked the workers' compensation system; (2) was discriminated against in the tenure, terms or conditions of employment; and (3) that the employer discriminated against the plaintiff in the tenure or terms of employment because he invoked the workers' compensation system. <u>Kirkwood</u>

FINDINGS AND RECOMMENDATION – 16

v. Western Hyway Oil Co., 204 Or. App. 287, 293 (2006) (citing Hardie v. Legacy Health

System, 167 Or. App. 425, 433 (2000)).  A plaintiff must present sufficient admissible evidence

to raise an inference that misconduct occurred, but need not prove actual discrimination.

McDonnell Douglas Corp., 411 U.S. at 802-04; Warren v. City of Carlsbad, 58 F.3d 439, 442

(9th Cir.1995).

C. **Analysis**

      Here, Plaintiff establishes a prima facie case for discrimination.  There is no dispute that

Plaintiff filed workers' compensation injury claims pursuant to ORS Chapter 656.  The parties

also do not dispute that Defendant subjected Plaintiff to discipline leading up to and including

termination.  Defendant, however, contends that Plaintiff cannot establish a causal connection

between his claims for workers' compensation and Defendant's adverse employment action.

      In order to establish the third prong, or the "causal link" of the prima facie case, Plaintiff

must show that his workers' compensation claim was a "substantial factor" in Defendant's

decision to terminate him. See,  Seitz, 100 Or. App. at 675 (citing Holien, 298 Or. at 90 n. 5).

Here, given the minimal standards of production, Plaintiff satisfies the third prong of the prima

facie test.  See Chuang v. University of California Davis, Bd. of Trustees, 225 F.3d 1115, 1124

(9th Cir. 2000)(holding that plaintiff in an employment discrimination action need produce very

little evidence in order to overcome an employer's motion for summary judgment).

      The evidence shows that Plaintiff filed a workers' compensation claim in 2007 and that

between May 11, 2007 and December 12, 2010, Plaintiff incurred a total of over 24 months of

temporary total or partial disability including sixteen continuous months of lost-time from

August 2009 through December 12, 2010. (2nd Hollander Decl., Ex. 5).  Plaintiff returned to

work full-time as a driver on December 13, 2010. Evidence in the record reflects that sometime

FINDINGS AND RECOMMENDATION – 17

after Goodall's arrival as Division Manager of the Coast Division in February 2011, he or his management team reviewed incident and accident records for all Cascade Center employees. The record shows that one of Goodall's goals was reducing the number of injuries that were so severe that employees incurred lost time. (2nd Hollander Decl., Ex. 27, p. 2). At some point prior to March 15, 2011, Goodall intercepted Plaintiff while on route and discussed Plaintiff's injury record, informing Plaintiff that he had the most driver injuries at Cascade Center and asking Plaintiff if he "saw an employee that had all these injuries and he came to apply for . . . a job, would you hire him?"

The evidence shows that in the span of 43 days that Plaintiff was able to work between March 15, 2011 and July 19, 2011, he was scheduled for ride alongs on March 15, 2011; March 22, 2011; April 7, 2001; April 25, 2011; July 18, 2011 and July 19, 2011.  Plaintiff received progressively harsher discipline over the course of this period including a termination letters on April 26, 2011 and July 19, 2011.

Plaintiff was taken off work by his doctor between April 28, 2011 and July 18, 2011 and filed a Workers' Compensation stress claim on May 2, 2011. Plaintiff returned to work on July 18th and was scheduled for a ride-along that day and the following day as well.  Plaintiff had 46 observed methods infractions on the July 18th ride-along and 30 observed infractions on July 19th.  After his ride-along on the 19th. Plaintiff received a second termination notice.

Although the alleged adverse employment actions took place a number of years after Plaintiff filed his initial workers' compensation claim, the evidence shows that Plaintiff's claim was ongoing in both its procedural progress and in the manifestations and exacerbations of Plaintiff's injuries.  Defendant's progressive discipline commenced within four months of

Plaintiff's return to full-time work as a driver after a sixteen month absence due to a workplace

injury.    In <u>Coszalter v. City of Salem</u>, 320 F.3d 968, 978 (9th Cir. 2003), the Court opined that

> [r]etaliation often follows quickly upon the act that offended the retaliator, but
> this is not always so. For a variety of reasons, some retaliators prefer to take their
> time: They may wait until the victim is especially vulnerable or until an especially
> hurtful action becomes possible. Or they may wait until they think the lapse of
> time disguises their true motivation. We should be particularly sensitive to this
> last point, for if we establish a per se rule that a specified time period is too long
> to support an inference of retaliation, well-advised retaliators will simply wait
> until that period has passed.

 The Court held that "[w]hether an adverse employment action is intended to be retaliatory is a

question of fact that must be decided in the light of the timing and the surrounding

circumstances,"  <u>id</u>. and went on to caution that that "[a] rule that any period over a certain time

is per se too long (or, conversely, a rule that any period under a certain time is per se short

enough) would be unrealistically simplistic." <u>Id</u>. at 977-978.

In addition, although the record does not support Plaintiff's contention that other drivers

with methods infractions were not disciplined, the record before the court does reflect that

several of the identified other employees demonstrated more methods infractions than Plaintiff

and that the number of ride-alongs  and the harshness of the discipline other employees received

differed significantly in quantity and quality. (Sullivan Decl. in Support of Def.'s Reply, Exs. B-

J; 2nd Hollander Decl., Exs. 13-25; Goodall Decl., Exs. B-F).  While the evaluation of this

comparator evidence may require, as Defendant argues, focus not just on the number of methods

infractions but also on the individualized circumstances of each driver and the nature of the

infractions, the need for such a fact-based analysis argues in favor of a denial of summary

judgment.

FINDINGS AND RECOMMENDATION – 19

Based on the circumstances of this case, the guidance of <u>Coszalter</u>, and viewing the evidence in the light most favorable to Plaintiff, I find that Plaintiff has raised the "inference" of discrimination necessary to support his prima facie case.

The burden thus shifts to Defendant to present evidence of a legitimate, non-discriminatory reason for its employment decisions. Defendant argues that the legitimate, nondiscriminatory reasons for Plaintiff's termination were Plaintiff's ongoing record of poor performance and methods violations Defendant argues that it was concerned with worker injuries as a safety issue and not a workers' compensation issue. Defendant points to evidence in the record that shows that other drivers also received follow-up ride-alongs within or near the time frame identified by Plaintiff and other drivers also received discipline for failure to follow methods or other performance issues. (Sullivan Decl. In Support of Def.'s Reply, Exs. B-L; Goodall Decl. in Support of Def.'s Reply, Exs. A-F). Defendant has also produced evidence that Plaintiff consistently had over-allowed hours, was routinely on the 9.5 list but had difficulty keeping to 9.5 hours, had one of the worst records for reported injuries and failed to show improvement in his work performance by repeatedly demonstrating the same methods violations over the course of his ride-alongs.

This evidence is sufficient to shift the burden back to Plaintiff. Thus, the issue before this Court is whether Plaintiff has produced sufficient evidence to raise a genuine issue of fact as to whether Defendant's proffered reasons were pretextual. The plaintiff in a discrimination case may "survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reason." <u>Chuang v. Univ. of Cal. Davis, Bd. of Trustees</u>, 225 F.3d 1115, 1127 (9th Cir.2000).

Plaintiff here relies on the same evidence submitted in support of his prima facie case to support his argument that there exists a genuine issue of material fact with respect to Defendant's proffered nondiscriminatory reasons for its progressive discipline and termination of Plaintiff. That evidence includes Goodall's discussion with Plaintiff of his injury record, the timing and frequency of Plaintiff's ride-alongs, the frequency and severity of the progressive discipline and Defendant's supervision and discipline of Plaintiff as compared to other drivers. I find that all of the evidence before the court, viewed in a light most favorable to Plaintiff, creates a question of fact regarding at least Defendant's assertion that its disciplinary decisions regarding Plaintiff were motivated by concerns of safety and performance issues.

Plaintiff has shown that there are disputed issues of material fact. Viewing the evidence in the light most favorable to Plaintiff, and drawing all reasonable inferences in his favor, a reasonable jury could conclude that the decision to terminate Plaintiff's employment was motivated by unlawful discrimination. Furthermore, I conclude that the record presents factual issues sufficiently complex that summary judgment would be inappropriate. The issues of credibility and comparison which are predominantly at play here can only properly be decided by a trier of fact. Accordingly, Defendant's motion for summary judgment should be denied

### Conclusion

Based upon Plaintiff's voluntary withdrawal of claims Two through Four and for the reasons discussed above, Plaintiff's claims Two through Four are dismissed, Plaintiff's motion to strike (# 54) is DENIED and his motion for summary judgment (# 40) should be DENIED. Defendant's evidentiary objections are DENIED and its motion for summary judgment (#42 ) should be DENIED.

FINDINGS AND RECOMMENDATION – 21

**<u>Scheduling Order</u>**

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due August 18, 2014.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 29th day of July, 2014.


            /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION – 22